IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT W. PACE,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     CASE NO.: 2:13-CV-697-WKW
                                   )            [WO]
ALFA MUTUAL INSURANCE              )
COMPANY, *et al*.,                 )
                                   )
          Defendants.              )

## MEMORANDUM OPINION

This is an employment discrimination case.  On September 26, 2013, Plaintiff Robert W. Pace ("Plaintiff") filed a complaint against Defendants Alfa Mutual Insurance Company, Alfa Life Insurance Corporation, and Alfa Corporation (collectively "Alfa"). Plaintiff claims that Alfa retaliated against him for participating in a sexual harassment investigation and lawsuit (Count I), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.  (Doc. # 1). Plaintiff further asserts several state law claims:  (1) negligent and/or wanton hiring, training, supervision and retention (Count II); (2) fraudulent misrepresentation (Count III); (3) fraudulent suppression (Count IV); and (4) negligent and/or wanton misrepresentation and suppression (Count V).

On March 31, 2016, the court entered an order granting in part and denying in part Alfa's motion for summary judgment.  (Doc. # 97.)  This opinion sets forth the reasoning underlying that ruling.[1]

## I. JURISDICTION AND VENUE

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1337.  Personal jurisdiction and venue are not contested.

## II. BACKGROUND AND OPERATIVE FACTS[2]

Plaintiff began his employment with Alfa in November of 1986 in Mississippi. He served twenty-seven years with Alfa as an at-will employee.  From approximately April of 1990 to April of 2013, he was employed by Alfa as Senior Vice President of Marketing for the State of Mississippi.  Plaintiff held the same position for the State of Georgia from January of 2010 through April of 2013.  Between 1997 and June of 2000, Alvin H. Dees, Jr., Executive Vice President of Marketing, was Plaintiff's direct supervisor.

---

[1] On November 25, 2015, Alfa's summary judgment motion was referred to the Honorable Paul W. Greene.  (Doc. # 88.)  However, by separate order entered on March 31, 2016, the order referring this case to Judge Greene has been vacated.  (Doc. # 96.)

[2] The following statements are the "facts" for summary judgment purposes only, and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The court has gleaned these statements from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).

In September of 2000, an Alfa employee named Tracy Reid Wilson filed an action against Dees and Alfa, charging them with sexual harassment, discrimination, and retaliation ("*Wilson* matter").[3] During the litigation of the *Wilson* matter, Plaintiff was interviewed on several occasions either by representatives of Alfa or their counsel.  Plaintiff was also deposed as a witness in that case.  According to Plaintiff, Dees was present at Plaintiff's deposition in the *Wilson* matter.

Plaintiff testified that, in or around September of 2000, after he was interviewed in connection with the *Wilson* matter, Dees confronted Plaintiff and asked him about what he was asked in the interview and how he responded.  Plaintiff further testified with respect to this encounter that: (1) Plaintiff told Dees he was asked about any business trips the two of them had together; (2) Plaintiff specifically discussed with Dees a trip to Galveston where Dees and Wilson were in the hotel room for a couple of days; and (3) after telling Dees that the situation has placed him in a difficult situation, Dees became furious and told Plaintiff while walking away that "he was through with [Plaintiff]."  Dees testified that he did not recall having this conversation with Plaintiff and that he did not know Plaintiff was a witness in the *Wilson* action.  (Doc. # 68-3 at depo. p. 62.)

---

[3] Court records reflect that, on January 17, 2001, Wilson filed an employment discrimination action in this Court, *Wilson v. Alfa Mutual Insurance Company, et al.*, Civil Action No. 2:01-cv-66-ID-VPM.  The parties, nevertheless, consistently refer to the litigation in the *Wilson* matter as commencing in or around September of 2000.

Before the litigation involving the *Wilson* action had occurred, Plaintiff interacted with Dees and Wilson on various occasions. Plaintiff testified that "[he] was very much aware that [Dees] knew that [Plaintiff] knew many damaging things to [Dees] that would have been" harmful to Dees had Plaintiff revealed them. (Doc. # 68-1 at depo. p. 20.) Plaintiff was aware that Wilson had accompanied Dees and Plaintiff "on a number of business trips," in addition to the Galveston trip, and that Wilson "had no business purpose for being there." (Doc. # 68-1 at depo. p. 14.) Plaintiff was also present when Dees and Wilson concocted a scheme to set up Alfa's president at the time, Goodwin Myrick, by having Wilson seduce Myrick so that he could get Myrick fired and Dees could advance in the company. (Doc. # 68-1 at depo. pp. 35-36.) According to Plaintiff, Dees was aware that Wilson "had been confiding a lot of harmful information to [Plaintiff]." (Doc. # 68-1 at depo. p. 35.)

Dees's employment with Alfa ended with an early retirement in October of 2000. (Doc. # 68-3 at depo. pp. 20, 54.) Jerry Newby, Alfa's president from December of 1998 through December of 2012, testified that he had talked to Dees after the *Wilson* action had commenced. (Doc. # 90-1 at depo. p. 17.) Newby informed Dees that he could not have Dees working for the company anymore because Newby could not trust him. (Doc. # 90-1 at depo. pp. 17, 20.) Newby further

testified that if Dees had not retired, he would not have allowed Dees to continue his employment.  (Doc. # 90-1 at depo. p. 21.)

In December of 2012, Jimmy Parnell was elected president and chief executive officer ("CEO") of Alfa.  (Doc. # 68-1 at depo. p. 232; Doc. # 68-4 at depo. pp. 7-8.)  As an outsider, Dees had supported Parnell's campaign to become president.  (Doc. # 68-3 at depo. p. 9.)  At that time, Plaintiff asked Parnell whether there would be any changes with respect to Plaintiff's position as vice president of marketing for Mississippi and Georgia, and Parnell told Plaintiff that he "had been a bright spot in this organization for years now" and that he had "nothing to be concerned about" with respect to his job or position in the company.  (Doc. # 68-1 at depo. p. 88; Doc. # 68-4 at depo. p. 72.)   Plaintiff assumed Parnell's reassurance meant "whatever restructuring was going to happen in the near future in the early stages of his tenure, that it was not going to affect [Plaintiff] because [his] job and [his] status w[ere] secure for this period of time."  (Doc. # 68-1 at depo. p. 90.)  Plaintiff relied on Parnell's reassurance by continuing to work for Alfa rather than move to a different company.  (Doc. # 68-1 at depo. p. 89.)

In the fall of 2012, the president of Cotton States, Jeff Koerner, indicated to Plaintiff that he might have a position available for Plaintiff at Cotton States.  (Doc. # 68-1 at depo. pp. 112-13.)  Plaintiff chose not to pursue this potential lead for a job

after his conversation with Parnell and was otherwise never offered any position with Cotton States. (Doc. # 68-1 at depo. p. 113.) Plaintiff did not look at any other job opportunity during this time when Alfa's leadership was changing.

During his campaign to become Alfa's president and CEO, Parnell stated that he would rehire Dees even though he was familiar with the controversy surrounding the *Wilson* action. (Doc. # 68-1 at depo. p. 229; Doc. # 68-3 at depo. pp. 9-10.) Despite dissension from some of Alfa's board members, Parnell was granted authority to rehire Dees, and his hiring became effective on February 1, 2013. (Doc. # 68-4 at depo. pp. 33-34.) Effective February 1, 2013, Dees assumed the position of executive vice president of marketing—the position he had held previously—and again served as Plaintiff's supervisor. (Doc. # 68-2 at p. 10; Doc. # 68-3 at depo. p. 16.) Before Dees returned to Alfa, Plaintiff's production was up 13 percent and was better than all other districts in Alfa's organization. (Doc. # 68-3 at depo. p. 31.)

On January 31, 2013, Plaintiff and Dees engaged in a telephone conversation in which Dees said, "[B]oy, I bet you thought you'd never have to mess with me again now, didn't you?" (Doc. # 68-1 at depo. p. 9.) When Plaintiff mentioned the name of Jerry Newby to Dees during a conversation, Dees told Plaintiff that Newby had ruined his life and that Newby "got rid of" Dees even though Dees had offered to pay the settlement in the *Wilson* case. (Doc. # 68-1 at depo. p. 25.) Dees also

communicated to Plaintiff his anger regarding Alfa's general counsel, Al Scott, who had tried to prevent Dees from returning to the company. (Doc. # 68-1 at depo. pp. 25-26.)

Plaintiff testified about several instances of Dees's hostility toward him upon Dees's return to Alfa. During his first week back on the job, Dees transferred Plaintiff's administrative assistant, Allison Nicholson, to be his own assistant without notifying Plaintiff. (Doc. # 68-1 at depo. pp. 130, 137, 277.) When Plaintiff discussed the transfer matter with Dees, his supervisor said, "[I]f that's the worst thing I do to you, . . . you'll be all right." (Doc. # 68-1 at depo. p. 277.) Next, during a managerial meeting, Plaintiff commented that there were some underwriting issues that were keeping him up at night to which Dees walked over to Plaintiff and said, "[T]hat ain't why you're losing sleep at night now, is it?" (Doc. # 68-1 at depo. pp. 131-32.) Plaintiff further testified that: (1) Dees presented a video at a sales meeting showing Plaintiff from the torso down but with his head cut off; (2) it was clear he was "an outcast" as nobody would look him in the eye; (3) Carol Gholson, a high-level managerial employee with Alfa and who had observed Dees's interaction with Plaintiff, advised Plaintiff that he should go work for another company; and (4) another agent informed Plaintiff that Plaintiff was on Dees's hit list. (Doc. # 68-1 at depo. pp. 132, 134-35.)

7

After Parnell's election, many personnel and structural changes occurred at Alfa. One change involved Plaintiff's peer, Patrick Smith, who held the position of senior vice president of marketing for Alabama during the relevant time period. (Doc. # 68-1 at depo. p. 49; Doc. 68-3 at depo. p. 89.) Smith's job was eliminated on February 15, 2013, and he was then fired. (Doc. # 68-1 at depo. p. 49-50, Doc. 68-2 at p. 8; Doc. 68-3 at depo. p. 89.) Other changes also took place at Alfa:

(1)   On March 22, 2013, Chad Watts was demoted from regional marketing vice president in Alabama to an agent, which was lower than the level of district manager. (Doc. # 68-1 at depo. p. 83, Doc. # 68-2 at pp. 8-9; Doc. # 68-4 at depo. p. 85.)

(2)   On March 22, 2013, Tommy Coshatt, who was the other regional marketing vice president in Alabama, was demoted to a district manager position. (Doc. # 68-2 at p. 9; Doc. # 68-4 at depo p. 85.)

(3)   On March 22, 2013, David Christenberry and Tim Timmons were promoted from their district manager positions to regional vice presidents for marketing for South and North Alabama, respectively. (Doc. # 68-1 at depo p. 104; Doc. # 68-2 at p. 9.)

(4)   On April 30, 2013, Dees directed Darrell McNeal and Mark Evans, who were both state marketing vice presidents in the "Georgia/Mississippi sales and marketing team" to report directly to Dees. (Doc. # 68-2 at p. 11.)

(5)   On April 30, 2013, Mickey Lambert, a district manager at the time, was moved to an agent position in Hattiesburg, Mississippi. (Doc. # 68-2 at p. 11.)

On April 30, 2013, Plaintiff's position as senior vice president of marketing for Georgia and Mississippi was eliminated, and he was demoted by Dees to the position of district manager for South Mississippi. (Doc. # 68-1 at depo. pp. 122-23, 162; 68-2 at p. 11; Doc. # 68-4 at depo. p. 118; Doc. # 68-6 at depo. pp. 52-53; Doc. # 74-1 at p. 2.) As part of his position as district manager, Plaintiff's office moved from Hattiesburg to Jackson, Mississippi. Plaintiff testified that he had once held the district manager position "some 27 years earlier" and that, even though his salary would remain the same for approximately one year, it would be "cut by approximately 65%" thereafter. (Doc. # 74-5 at ¶ 11.) When Plaintiff confronted Dees "as to why he was demoting [Plaintiff] when [Plaintiff] was the only Senior Vice President whose territory was growing in production, . . . Dees looked at [Plaintiff], stuttered and stammered, and said, '[W]ell, it's hard to explain.'" (Doc. # 74-5 at ¶ 12.)

On May 17, 2013, Plaintiff corresponded with Parnell, stating his belief that his "two level demotion" to the district manager position was "motivated by [Dees's] personal issues with [Plaintiff] rather than what is best for the company." (Doc. # 68-2 at p. 13.) Plaintiff stated in his correspondence that "[f]our Regional Vice President

positions were filled during the restructuring with substantially less experienced people than" Plaintiff. (Doc. # 68-2 at p. 13.)[4] Plaintiff further informed Parnell that:

> I was in good standing with Alfa during Mr. Dees'[s] previous tenure with the company.  I was in good standing with Alfa prior to Mr. Dees'[s] return to Alfa.  Shortly after Mr. Dees'[s] return I have been treated in a grossly unfair manner by him.  Due to these facts I can only conclude that I have been retaliated against by Mr. Dees for my involvement acting to protect the company during the investigation and legal proceedings leading up to his termination from Alfa.

(Doc. # 68-2 at p. 14.)  Lastly, Plaintiff sought to discuss with Parnell possible remedies to his situation, including reinstatement to his senior vice president status. (Doc. # 68-2 at p. 14.)

Parnell traveled by plane to Madison, Mississippi, within one or days to meet with Plaintiff.  (Doc. # 68-1 at depo. pp. 162-63; Doc. # 68-4 at depo. pp. 74-75.)  In that meeting, Parnell informed Plaintiff that Dees had never said anything about retaliating against Plaintiff and that Parnell had "big plans" for Plaintiff.  (Doc. # 68-1 at depo. p. 190.)  Plaintiff  felt good about the conversation and believed Parnell was going to find him a secure position in Alfa.  (Doc. # 68-1 at depo. pp. 191-92.) However, through an Alfa representative, Parnell subsequently informed Plaintiff that if he did not agree to the district manager position he would be provided with a

---

[4] Plaintiff testified that if he had been offered one of the senior vice president positions, this lawsuit would not have been filed.  (Doc. # 68-1 at depo. pp. 120-21.)

severance package.  (Doc. # 68-1 at depo. pp. 193-94.)  Plaintiff rejected the severance offer.  (Doc. # 68-1 at depo. p. 196.)

Plaintiff acknowledges that he was doing some aspects of the district manager job and could have done it better during the time period following his meeting with Parnell in Madison.  (Doc. # 68-1 at depo. p. 199.)  In a supervisory report dated July 12, 2013, Plaintiff's supervisor at that time, Evans, noted Plaintiff's failure to attend mandatory meetings, his failure to perform agent reviews as required, and lack of overall production.  (Doc. # 68-2 at pp. 18-19.)  Evans's report further reflected Plaintiff's statement that he has "no intention of engaging in the position as district manager with Alfa."  (Doc. # 68-2 at p. 19.)  According to the report, Plaintiff's failure to show "immediate, sustained improvement in [his] leadership" would result in "disciplinary action up to and including termination."  (Doc. # 68-2 at p. 19.)

After consulting with his attorneys, Plaintiff voluntarily resigned from Alfa on July 22, 2013.  Prior to his resignation, on July 3, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation in violation of Title VII of the Civil Rights Act of 1964.  (Doc. # 68-2 at pp. 15-16.)  The EEOC subsequently issued Plaintiff a notice of right to sue, and Plaintiff timely filed his complaint in this case on September 26, 2013. (Doc. # 1-2 at p. 24.)

11

### III.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The evidence and the inferences from that evidence must be viewed in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

On a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id*.  If the moving party does not bear the trial burden of production, it may assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . .  [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").  If the moving party meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute of

material fact exists as to each of its claims for relief. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV.  DISCUSSION

### A.    <u>Retaliation under Title VII</u>

Plaintiff claims in Count I of his complaint that Alfa retaliated against him for engaging in statutorily protected activity – his participation in a sexual harassment investigation pertaining to the *Wilson* action. Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Congress thus recognized two predicates for retaliation claims: one for opposition to discriminatory practices, and another for participation in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an

unlawful employment practice by this subchapter." . . . And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Comm'n v. Total System Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted).

Proving that an employer retaliated against an employee is rarely a straightforward undertaking. A plaintiff's case generally rests entirely on circumstantial evidence, because direct evidence of an employer's intent or motivation often is either unavailable or difficult to acquire. *See Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1071 (3rd Cir. 1996) (*en banc*). Such is the case here as the parties rely only on circumstantial evidence. Federal courts typically evaluate the sufficiency of circumstantial evidence using some variant of the well-known framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). As Justice O'Connor observed in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), "the entire purpose of the *McDonnell Douglas prima facie* case is to compensate for the fact that direct evidence of

14

intentional discrimination is hard to come by."  490 U.S. at 271 (O'Connor, J., concurring).

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). The Supreme Court recently clarified a plaintiff's burden and held that, as to the causation standard for a retaliation claim, a plaintiff must "show that the [adverse employment action] would not have occurred in the absence of—that is, but-for—the defendant's conduct."  *Univ. of Texas Sw. Med. v. Nassar*, — U.S. —, 133 S. Ct. 2517, 2525 (2013).[5]  In other words, a plaintiff has to "establish that his or her protected activity was a but-for cause [and not just a motivating factor] of the alleged adverse employment action by the employer."  *Nassar*, 133 S. Ct. at 2534.

---

[5]  A split among various federal courts exists as to whether it is appropriate to impose the *Nassar* standard at the *prima facie* stage or pretext stage of analysis, and there is no published Eleventh Circuit decision on the topic.  *But see Murphree v. Comm'r*, No. 15-11737, ___ F. App'x ___, 2016 WL 827318, at *4 (11th Cir. Mar. 3, 2016) (observing that "[u]ltimately, Title VII retaliation claims require proof that '[the] protected activity was a but-for cause of the alleged adverse action by the employer,'" *id.* at *4 (quoting *Nassar*, 133 S. Ct. at 2534), but concluding that, "[b]ecause [the plaintiff's] claims fail under the burden-shifting framework established well before *Nassar*, we need not address whether *Nassar* changed our analysis of retaliation claims at summary judgment," *id.* at 5).  The conflict need not be resolved here.

Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show, through admissible evidence, a legitimate, non-retaliatory reason for the adverse employment action. *Burdine*, 450 U.S. at 255. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus," *id*. at 257, the presumption of retaliation created by the *prima facie* case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10. The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for retaliation. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).

### 1.    Prima Facie Case

Alfa concedes that Plaintiff's participation in the *Wilson* action constituted statutorily protected activity under Title VII. (Doc. # 67 at p. 4.) With regard to the second element of Plaintiff's *prima facie* case, Plaintiff contends that he suffered an adverse employment action in the form of his demotion to the district manager

16

position and resulting pay cut. (Doc. # 74 at pp.12-14.) Alfa does not dispute that such actions constitute adverse employment actions. (Doc. # 67 at p. 4; Doc. 78 at p. 2.)[6]

With respect to his *prima facie* case of retaliation, therefore, Plaintiff must show that the adverse employment action was causally related to his protected expression. To establish a causal connection, the plaintiff must demonstrate that "the decision-makers were 'aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated.'" *Carson v. Metro. Atlanta Rapid Transit Auth. (MARTA)*, 572 F. App'x 964, 969 (11th Cir. 2014) (quoting *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008)).

Alfa argues, with at least superficial factual support, that there is no temporal proximity between the protected activity in 2000 and the alleged retaliation in and after 2013. Ordinarily, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to

---

[6] In his complaint, Plaintiff alleged that the supervisory report issued to him in July of 2013 by Evans was an adverse action taken in retaliation for his filing an EEOC charge, thereby constituting a constructive discharge. (Doc. 1 at ¶ 47.) Plaintiff, however, makes no argument in his response to Alfa's summary judgment motion that Evans's supervisory report constitutes an adverse action. Accordingly, Plaintiff has abandoned any such claim of an adverse employment action relating to Evans's report. *See Fischer v. Fed. Bureau of Prisons*, 349 F. App'x 372, 375 n.2 (11th Cir. 2009) (explaining that plaintiff waived a claim by not addressing that issue in response to a summary judgment motion); *Marable v. Marion Military Institute*, 906 F. Supp. 2d 1237, 1260 (S.D. Ala. 2012) (recognizing that "[g]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").

create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). The Eleventh Circuit has held:

> But mere temporal proximity, *without more*, must be very close. A three to four-month disparity between the statutorily protected expression and the adverse employment action is not enough. Thus, *in the absence of other evidence tending to show causation*, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law.

*Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citations and quotations omitted) (emphasis added). "[W]here a plaintiff can establish a causal connection through 'other evidence tending to show causation,' a delay between the allegedly protected activity and the adverse activity is not fatal." *Ramirez v. Bausch & Lomb, Inc.*, 546 F. App'x 829, 832 (11th Cir. 2013) (quoting *Thomas*, 506 F.3d at 1364). Furthermore, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision[-] maker did not have knowledge that the employee engaged in protected conduct." *Brungart*, 231 F.3d at 799.

Alfa contends that Plaintiff has failed to establish the requisite temporal proximity between his adverse action—his demotion to the district manager position after his position was eliminated—and his protected activity in connection with the

*Wilson* action in the fall of 2000.  (Doc. 67 at pp. 6-7; Doc. 78 at pp. 2-3.)  Alfa

further contends that no evidence has been presented showing Dees knew about any

information Plaintiff allegedly provided in his protected activity.  (Doc. # 67 at p. 8;

Doc. # 78 at pp. 3-4.)

Plaintiff counters that he "has presented substantial evidence that Dees was

aware of his protected activity from Dees's personal attendance at Plaintiff's

deposition in the Tracey Wilson litigation and from Dees' confrontation of Pace

shortly after Pace was interviewed by Alfa's attorneys in the" *Wilson* action.  (Doc.

# 74 at p. 14.)  With regard to the issue of temporal proximity, Plaintiff contends that

"Dees and [Alfa's] retaliation against him was immediate, continuing although

interrupted by Dees' separation from employment with Alfa after the Tracey Wilson

matter, resumed immediately upon Dees' return as Pace's supervisor."  (Doc. # 74

at p. 16.)  Plaintiff contends, therefore, that "the temporal proximity of the protected

activity and Dees'[s] retaliation was, in fact, very close" and that "the Court should

consider his proffered evidence of temporal proximity, combined with the other facts

concerning causal relation in a light favorable to the Plaintiff."  (Doc. # 74 at p. 18.)

When the evidence is construed in the light most favorable to Plaintiff, he has

come forward with sufficient evidence to raise a genuine dispute of material fact as

to a causal connection between his protected activity and the adverse employment

action taken by Dees on behalf of Alfa.  Plaintiff has identified evidence that Dees was well aware of Plaintiff's protected activity in connection with his participation in the *Wilson* matter.  Plaintiff testified that he had interacted with Dees and Wilson on various occasions prior to the litigation in the *Wilson* matter, and Dees was aware that Plaintiff knew many aspects about Dees's relationship with Wilson that would be harmful to Dees had Plaintiff revealed them.  (Doc. # 68-1 at depo. pp. 20, 34-36.)

Plaintiff further testified that, sometime in or about September of 2000, representatives of Alfa interviewed him on several occasions in connection with the *Wilson* matter.  (Doc. # 68-1 at depo. pp. 10-11, 13, 17-19, 21, 245-46.)  Around this time, Dees confronted Plaintiff and asked him about what he was asked in one of his interviews and how he responded.  (Doc. # 68-1 at depo. pp. 10-11, 13-15.)  Plaintiff told Dees while being confronted that Plaintiff was asked about any business trips the two of them had together, that Plaintiff discussed with Dees one trip to Galveston where Dees and Wilson were in the hotel room for a couple of days, and that, after telling Dees that the situation has placed him in a difficult situation, Dees became furious and told Plaintiff while walking away that "he was through with [Plaintiff]." (Doc. # 68-1 at depo. pp. 13-15, 39-30.)  Even though Plaintiff communicated few details to Dees about what exactly he disclosed in his interviews, the evidence reflects that Dees was well aware that Plaintiff possessed critical facts detrimental to his

career.  Dees's concern about what Plaintiff may have disclosed in the investigation of the *Wilson* matter soon became confirmed when he lost his job with Alfa in October of 2000.  (Doc. # 68-3 at depo. p. 18-19.)

In arguing that no requisite temporal proximity has been established, Alfa points out that Plaintiff's demotion occurred in April of 2013 while Plaintiff's protected activity occurred in September of 2000.  (Doc. # 67 at pp. 6-7.)  However, Dees left his employment in October of 2000 and had no ability to retaliate against Plaintiff until he returned as his supervisor on February 1, 2013.  (Doc. # 68-2 at p. 10; Doc. # 68-3 at depo. pp. 8, 16, 19; Doc. # 68-4 at depo. p. 35.)  The evidence reflects that, on January 31, 2013, the day before officially returning to Alfa, Plaintiff and Dees engaged in a telephone conversation in which Dees said, "[B]oy, I bet you thought you'd never have to mess with me again now, didn't you?"  (Doc. # 68-1 at depo. p. 9.)  Thus, despite the fact years had passed since the time of Plaintiff's participation in the *Wilson* matter, Plaintiff's testimony indicates that Dees had not forgotten the circumstances surrounding why he left his employment with Alfa in 2000.

Soon after his return to Alfa, Dees engaged in a series of actions that further illustrate his animosity toward Plaintiff.  Dees quickly transferred Plaintiff's administrative assistant to be his own assistant without notifying Plaintiff and said to

21

Plaintiff, "[I]f that's the worst thing I do to you, . . . you'll be all right." (Doc. # 68-1 at depo. pp. 130, 137, 277.) In addition, the record reflects that:

(1)     During a managerial meeting, Plaintiff commented that there were some underwriting issues that were keeping him up at night to which Dees walked over to Plaintiff and said, "that ain't why you're losing sleep at night now, is it?" (Doc. # 68-1 at depo. p. 131-32.)

(2)     Carol Gholson, a high-level managerial employee with Defendant and who had observed Dees's interaction with Plaintiff, advised Plaintiff that he should go work for another company. (Doc. # 68-1 at depo. p. 134.)

(3)     Another agent informed Plaintiff that Plaintiff was on Dees's hit list. (Doc. # 68-1 at depo. p. 135.)

On April 30, 2013, Plaintiff's position as senior vice president of marketing for Georgia and Mississippi was eliminated, and he was demoted by Dees to the position of district manager for South Mississippi. (Doc. # 68-1 at depo. pp. 122-23, 162; Doc. # 68-2 at p. 11; Doc. # 68-4 at depo. p. 118; Doc. # 68-6 at depo. pp. 52-53; Doc. 74-1 at p. 2.) While approximately three months had passed between Dees's return to Alfa and Plaintiff's demotion and cut in pay, the evidence presented by Plaintiff regarding Dees's negative conduct toward Plaintiff shows sufficient causation between Plaintiff's protected activity and the adverse employment action. *See Ramirez*, 546 F. App'x at 832. Plaintiff, therefore, has established a *prima facie* case of retaliation.

### 2.     Legitimate, Non-Retaliatory Reason for Its Actions

Alfa has met its burden of articulating a legitimate, non-retaliatory reason for eliminating Plaintiff's vice-president position and demoting him to a district manager position.  Alfa provides evidence that the decision regarding Plaintiff's position with Alfa was only one of several personnel and structural changes made in the company's expected reorganization after Parnell's hire and Dees's return.  (Doc. # 68-1 at depo. pp. 52, 81-84, 101-04; Doc. # 68-2 at pp. 8-9, 11; Doc. # 68-3 at depo. p. 89; Doc. # 68-4 at depo. pp. 85-88.)  These changes included the elimination of Patrick Smith's vice-president position in Alabama that had corresponded with Plaintiff's position as the senior vice president of marketing for Georgia and Mississippi.  (Doc. # 68-1 at depo. p. 52, Doc. # 68-2 at p. 8; Doc. # 68-3 at depo. p. 89.)

### 3.     Pretext

The burden now shifts to Plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for retaliation.  *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).  Plaintiff cannot demonstrate pretext unless evidence supports both that the reasons were false *and* that retaliation was the real reason.  *See*

23

*Hicks*, 509 U.S. at 515. *See also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (stating the plaintiff must meet each proffered reason "head on," and cannot succeed by simply disputing the wisdom of the employer's proffered reasons). "A plaintiff will withstand summary judgment by demonstrating that 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find unworthy of credence.'" *Baker v. Russell Corp.*, 372 F. App'x 917, 920 (11th Cir. 2010) (quoting *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

The evidence offered by Plaintiff demonstrates weaknesses and inconsistencies in Alfa's proffered legitimate, non-retaliatory reasons for demoting Plaintiff.  With regard to the corresponding elimination of Patrick Smith's position as senior vice president of marketing for Alabama and ultimate firing from the company, Plaintiff testified that Smith had a very short tenure with Alfa and was not in good standing with the company before Parnell's hire and Dees's return.  (Doc. # 68-1 at p. 33.)

In contrast to Smith's situation, the record reflects that Plaintiff was employed with Alfa for twenty-seven years, that Plaintiff had been promoted consistently within the organization, that Plaintiff had received numerous accolades for his job performance, and that Plaintiff had not received a single negative or non-

complimentary report in his personnel file at any time before Dees returned to Alfa on February 1, 2013. (Doc. # 74-2 at pp. 2-8; Doc. # 78-3 at pp. 2-8; Doc. # 78-5 at ¶ 13.)  In December of 2012, Parnell recognized Plaintiff's long-term success by communicating to Plaintiff that he "had been a bright spot in this organization for years now" and that he has "nothing to be concerned about" with respect to his job or position in the company. (Doc. # 68-1 at depo. p. 88; Doc. # 68-4 at depo. p. 72.) Moreover, according to Dees himself, Plaintiff's production was up 13 percent from the previous year and was higher than all other districts in Alfa's organization. (Doc. # 68-3 at depo. p. 31.)

Plaintiff contends that his demotion took place at the same time several lesser-qualified individuals in the company were promoted to regional-level jobs. (Doc. # 68-1 at depo. p. 126; Doc. # 74 at p. 21.)  Specifically, the evidence presented reflects that: (1) on March 22, 2013, Christenberry and Timmons were promoted from their district manager positions to regional vice presidents for marketing for south and north Alabama respectively (Doc. # 68-1 at depo. pp. 104; Doc. # 68-2 at p. 9); and (2) on April 30, 2013, Dees directed McNeal and Evans, who were both state marketing vice presidents in the "Georgia/Mississippi sales and marketing team" to report directly to Dees (Doc. # 68-2 at p. 11).  Plaintiff testified with regard to these promotions and Smith's firing that:

What I contend is that because I had been there significantly longer, because I had worked for Al Dees and been promoted several times by him, because I had been promoted over people who received those jobs of senior vice – those regional senior vice president jobs who were with the company at the time that I was being promoted by Al Dees.  So he could have given those jobs to them at any point during that time, but he didn't.  He gave it to me.

And now all of a sudden he comes back and everything is different and he could have given me those jobs again, but instead he gave two of them to people who had no regional level experience whatsoever, one of them who he had tried to fire before he was – lost his job in his previous tenure.

(Doc. # 68-1 at depo. p. 126.)   Plaintiff clarified that Dees had tried to fire Christenberry during his tenure before leaving Alfa in 2000.  (Doc. # 68-1 at depo. p. 127).

Plaintiff has presented evidence that raises a genuine dispute of material fact as to whether Dees's real reason for demoting Plaintiff and cutting his pay was, in fact, due to his desire to retaliate against Plaintiff for his having participated in the *Wilson* matter.  As discussed above, around the time Plaintiff was interviewed in connection with the *Wilson* matter, Dees confronted Plaintiff and asked him about what he was asked in the interview and how he responded.  (Doc. # 68-1 at depo. pp. 10-11, 13-15.)  The record further reflects that Dees began to antagonize Plaintiff immediately upon reassuming his post in 2013 as Plaintiff's supervisor.  (Doc. # 68-1 at depo. pp. 11, 130-31, 137-38, 277.)  Dees's behavior toward Plaintiff suggests that

he had not forgotten the circumstances that led to his departure from Alfa in 2000. Other Alfa employees noted Dees's hostility, leading them to inform Plaintiff that he was on Dees's hit list and should look for another job.  (Doc. # 68-1 at depo. p. 134-35.)

When construing the evidence in the light most favorable to Plaintiff, the court finds that he has come forward with sufficient evidence to lead a reasonable factfinder to conclude that the legitimate, non-retaliatory reasons for demoting Plaintiff and cutting his pay are unworthy of credence.  The evidence offered by Plaintiff indicates that his position with Alfa appeared to be secure before Dees's return and that he should have, at the very minimum, remained in a position similar to his long-standing one as a successful senior vice president.  Rather, despite Plaintiff's exemplary job performance with Alfa, Plaintiff was demoted to a district manager shortly after Dees's return while other individuals without his extensive qualifications and superlative job performance evaluations were promoted.  (Doc. # 74-1 at p. 2.)

Evidence presented regarding Dees's antagonistic actions toward Plaintiff following Dees's return to Alfa also tends to negate any suggestion that Alfa's reorganization was the real reason behind the adverse employment actions taken against Plaintiff.  Accordingly, because Plaintiff has demonstrated the existence of

27

pretext and that Dees's retaliation was the but-for cause of his demotion and cut in pay, Alfa's motion for summary judgment as to Plaintiff's Title VII claim of retaliation is due to be denied.

## B.   State Law Claims

### 1.   Negligent and/or Wanton Hiring, Training, Supervision and Retention

In Count II of the Complaint, Plaintiff asserts that Alfa "negligently, recklessly, wantonly and/or intentionally hired officers, managers and/or supervisors within its corporation that it knew would in the future and had in the past retaliated against" Alfa's employees.  (Doc. # 1 at p. 14.)  Alfa contends that Plaintiff's claim fails because Plaintiff has failed to identify any tort committed by Dees against Plaintiff. (Doc. # 67 at pp. 14-15.)  Agreeing that he has not alleged a tort recognized under Alabama law, Plaintiff has abandoned his claim in Count II.  Accordingly, Alfa's summary judgment motion is due to be granted as to this claim.

### 2.   Fraudulent Misrepresentation

Plaintiff asserts in Count III of the Complaint that Alfa, through certain remarks made by Parnell, made representations which it knew to be false, that Plaintiff reasonably relied on these representations to continue employment with Alfa, and that Plaintiff was injured and incurred damages as a proximate result of Alfa's

28

misrepresentations.  (Doc. # 1 at pp. 16-17.)  Specifically, Plaintiff cites Parnell's remarks to Plaintiff that he "had been a bright spot in this organization for years now" and that he has "nothing to be concerned about" with respect to his job or position in the company.  (Doc. # 68-1 at depo. p. 88; Doc. # 68-4 at depo. p. 72.)  Plaintiff contends that, based on Parnell's remarks, he "continued in his employment with Alfa and allowed a State Manager position with another company to evaporate."  (Doc. # 74 at p. 26.)

In Alabama, "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala. Code § 6-5-101.  To succeed on a claim of fraudulent misrepresentation, a plaintiff must show: "'(1) a false representation (2) concerning a material existing fact (3) [reasonably] relied upon by the plaintiff (4) who was damaged as a proximate result.'" *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000) (quoting *Baker v. Bennett*, 603 So. 2d 928, 935 (Ala. 1992)).

Alfa first contends that Plaintiff cannot establish a claim of fraudulent representation because he cannot demonstrate that Parnell made a false representation of a material fact with the necessary intent to deceive.  (Doc. # 67 at p. 16.)  Alfa characterizes Plaintiff's misrepresentation claim as one for promissory fraud since "it

involves an alleged misrepresentation about a future act." (Doc. # 67 at p. 16.) According to Alfa, Parnell merely provided Plaintiff with general reassurances in December of 2012 and had no intent to deceive. (Doc. # 67 at p. 16.) Plaintiff, however, maintains that Parnell's misrepresentations were fraudulent as they induced him to stay at his job to his detriment. (Doc. # 74 at p. 26.)

Alfa correctly asserts that Plaintiff's fraudulent misrepresentation claim is one of promissory fraud in that Parnell's statements essentially communicated to Plaintiff that he need not be concerned about his position or job in the company going forward. "Promissory fraud . . . occurs by the failure to perform a promise – *i.e.* the failure to perform some promised future act." *Glenn Constr. Co., LLC v. Bell Aerospace Servs., Inc.*, 785 F. Supp. 2d 1258, 1276 (M.D. Ala. 2011). Alabama law "places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future." *Nat'l Sec. Ins. Co. v. Donaldson*, 664 So. 2d 871, 876 (Ala. 1995). Thus, in addition to the four elements of fraudulent misrepresentation set forth above, Plaintiff also must show "that at the time of the misrepresentation, [Parnell] had the intention not to perform the act promised, and . . . proof that the defendant had an intent to deceive." *S.B. v. Saint James Sch.*, 959 So. 2d 72, 101 (Ala. 2006).

A fair reading of Parnell's remarks to Plaintiff in December of 2012 reveals nothing more than general reassurances that Plaintiff should not be concerned about his position in Alfa. Plaintiff has submitted no evidence to suggest that Parnell had the requisite intent at the time he made the remarks not to perform the act promised. The record is devoid of any evidence to suggest that Parnell intended to deceive Plaintiff with his general reassurances. When construing all the evidence in the light most favorable to Plaintiff, Plaintiff otherwise fails to show that Parnell made a false representation with respect to an existing fact at the time he made his remarks. Plaintiff's claim for fraudulent misrepresentation, therefore, fails.

Even assuming that Parnell made a false representation concerning a material existing fact with the requisite intent to deceive, Alfa further contends that Plaintiff's alleged reliance on Parnell's remarks was not reasonable. (Doc. # 67 at p. 18.) Plaintiff counters that Parnell's remarks induced him to continue his job where he otherwise would have left or pursued other employment. (Doc. # 74 at p. 26.)

With regard to the reliance element of this claim, a plaintiff must show not only that he relied on the alleged misrepresentation, but also that such reliance was reasonable under the circumstances. *Baker v. Metro. Life Ins. Co.*, 907 So. 2d 419, 421 (Ala. 2005). "The determination of reliance should be 'based on all the circumstances surrounding the transaction including the mental capacity, educational

31

background, relative sophistication, and bargaining power of the parties." *Graham v. First Union Nat'l Bank of Ga.*, 18 F. Supp. 2d 1310, 1317 (M.D. Ala. 1998) (quoting *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997)). "[W]here a party has reason to doubt the representation . . . , he has no right to act thereon." *Bedwell Lumber Co. v. T & T Corp.*, 386 So. 2d 413, 415 (Ala. 1980).

Plaintiff testified that he chose not to pursue a potential job lead at Cotton States after his conversation with Parnell.  (Doc. # 68-1 at depo. pp. 112-13.) However, Plaintiff's deposition testimony further reveals that he: (1) was aware that changes to the personnel and management structure had occurred in the past after a change in leadership (Doc. # 68-1 at depo. pp. 57-62, 168-69); (2) was aware that such changes could take place after Parnell came on board following his election as Alfa's President and CEO (Doc. # 68-1 at depo. p. 169); (3) recognized that Parnell could change his mind after the meeting in December 2012 (Doc. # 68-1 at depo. p. 98); and (4) knew that Parnell did not have the authority to hire and fire anyone (Doc. # 68-1 at depo. pp. 96-97.)

When the evidence is construed in the light most favorable to Plaintiff, his testimony reflects that his reliance upon Parnell's general assurances in December of 2012 was not reasonable after knowing that changes in Alfa's personnel and management structure were likely and that Parnell was well within his right to change

his mind regarding Plaintiff.  In other words, Plaintiff could not reasonably rely on such assurances to believe that he would never face any potential changes regarding his position at Alfa.[7]  Plaintiff's claim for fraudulent misrepresentation fails, therefore, on the alternative basis that Plaintiff has not raised a genuine dispute of material fact as to reasonable reliance.[8]

### 3.   Fraudulent Suppression

Plaintiff asserts in Count IV of his Complaint that Alfa "fraudulently suppressed and/or concealed that [Alfa] planned to change Plaintiff's job duties and responsibility and not allow Plaintiff to continue to work as the Senior Vice President of Marketing for Mississippi and Georgia." (Doc. # 1 at p. 17.)  Plaintiff alleges that Alfa had a strict duty to disclose all material facts pertaining to Plaintiff's changing job responsibilities and duties.  (Doc. # 1 at p. 18.)

---

[7] Plaintiff argues for the first time in his response to the summary judgment motion that Parnell fraudulently misrepresented to Plaintiff during a conversation in May of 2013 that Parnell had "big plans" for Plaintiff. (Doc. # 68-1 at p. 49; Doc. # 74 at p. 27.)  This conversation took place after Plaintiff had been demoted to the district manager position.  Plaintiff, however, has not moved to amend his complaint to raise this additional claim of fraudulent misrepresentation.  It is, therefore, not properly before the court.  *See Boone v. City of McDonough*, 571 F. App'x 746, 750-51 (11th Cir. 2014) (recognizing that claims raised for the first time in a response to a summary judgment are not properly before the district court).  Moreover, Plaintiff fails to establish that Parnell made this statement with the intent to deceive Plaintiff or that Plaintiff reasonably relied on this statement in any fashion to his detriment.

[8] Alfa further argues that Plaintiff's fraudulent misrepresentation claim should be dismissed because Plaintiff cannot show how he was damaged due to his alleged reliance on Parnell's remarks. (Doc. # 67 at p. 19.)  It is unnecessary to determine whether Plaintiff can satisfy the damages element of his fraudulent misrepresentation claim as he has failed to establish all other elements of this claim.

"In order to establish  [his] claim of fraudulent suppression, [Plaintiff was] required to prove 1) that [Alfa] had a duty to disclose material facts; 2) that [Alfa] concealed or failed to disclose those facts; 3) that the concealment or failure to disclose those facts induced [Plaintiff] to act or refrain from acting; and 4) that [Plaintiff] suffered actual damage as a proximate result."  *Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 11 (Ala. 2002).  "'[A]n action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed.'" *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009) (quoting *McGarry v. Flounoy*, 624 So. 2d 1359, 1362 (Ala. 1993)).

The Alabama Supreme Court has held that:

> A party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact.  A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case.

*Keck*, 830 So. 2d at 11.  Factors relevant to determining "whether the alleged circumstances create a duty of disclosure include, (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." *Cochran v. Five Points Temporaries, LLC*, 907 F. Supp. 2d

1260, 1278 (N.D. Ala. 2012) (citations and internal quotations omitted).  "This analysis is made on a 'case-by-case basis' and is flexibly applied."  *Id.*

Alfa cites two cases from the Alabama Supreme Court which, according to Alfa, "recognize a general duty of disclosure is not owed by employers to employees." (Doc. # 67 at p. 22.)  However, each case is materially distinguishable from the facts and legal issues presented in this case.

In the first case, *Morris v. Merritt Oil Co.*, 686 So. 2d 1139 (Ala. 1996), the plaintiff worked as a cashier in a convenience store.  *Id.* at 1140.  She sued the convenience store owners, the convenience store's sales coordinator, and the supplier, claiming that the defendants negligently or wantonly failed to provide her with a safe workplace when a gambling device known as the "Klondike" was placed in the store. *Id.*  The plaintiff further claimed that:  (1) the convenience store owners and sales coordinator "fraudulently suppressed the material fact of the illegality of the" gambling device; and (2) these defendants "had a duty to disclose to her that the Klondike could be an illegal gambling device."  *Id.* at 1145.  Without specifically commenting on whether the plaintiff's employer had a duty to disclose, the Alabama Supreme Court found no evidence to indicate that the convenience store owners and sales coordinator knew the Klondike was illegal and, thus, "no evidence of fraudulent suppression of material facts to the detriment of the plaintiff."  *Id.*

In the second case cited by Alfa, *Van Ryswyk v. Berwick Bay Oil Co.*, 571 So. 2d 291 (Ala. 1990), the plaintiff sued his former employer following termination of his employment. *Id.* at 292. In his appeal to the Alabama Supreme Court, the plaintiff contested summary judgment as to his claims that the employer, through its president, "was negligent in failing to disclose to him, prior to his accepting employment, that the president did not have the authority to offer him an employment contract for five years at a pay rate of $65,000 per year." *Id.* The Alabama Supreme Court affirmed summary judgment on these negligent counts, finding no evidence that the employer owed the plaintiff any duty. *Id.* at 293.

In contrast to *Van Ryswyk*, Plaintiff's claim against Alfa is one for fraudulent suppression as opposed to a negligence claim. In addition, the plaintiff in *Van Ryswyk* complained of conduct by the defendant's president that occurred before he became employed by the defendant. Plaintiff in this case, however, complains of statements made by Parnell that occurred while he was an active employee of Alfa. Application of the factors articulated in *Cochran* suggests that Alfa may have a duty to disclose information relevant to Plaintiff's standing with the company based on the parties' employer-employee relationship, the fact that such information would have great value to Plaintiff, and the fact that Plaintiff would have a limited opportunity to ascertain on his own matters relating to his standing with the company.

36

Even assuming that Alfa had a duty to disclose information pertaining to Plaintiff's standing with the company, Plaintiff fails to present evidence showing that Parnell suppressed any information in December of 2012 that Plaintiff's position with the company would be adversely affected going forward.   The record is devoid of evidence that Parnell concealed or failed to disclose any material information regarding Plaintiff's status with Alfa. *See Cork v. Marriott Int'l, Inc.*, 426 F. Supp. 2d 1234, 1246 (N.D. Ala. 2006) (recognizing that "a plaintiff faced with a motion for summary judgment on a fraudulent suppression claim must offer substantial evidence as to each of those elements").   Thus, when construing all the evidence in the light most favorable to Plaintiff, the court finds that Plaintiff's claim for fraudulent suppression cannot survive summary judgment.

### 4.    Negligent Misrepresentation and/or Suppression

Plaintiff asserts in Count V that Alfa, through certain remarks made by Parnell, "negligently, recklessly or wantonly made . . . representations and/or suppressed material facts relating to changing Plaintiff's job and not allowing him to work as the Senior Vice President of Marketing for Mississippi and Georgia." (Doc. # 1 at p. 19.) In order to establish a claim of negligent misrepresentation, a plaintiff must establish: "(a) a false representation of an existing material fact; (b) a representation (1) that the speaker knew was false when made, (2) that was made recklessly and without regard

to its truth or falsity, or (3) that was made by telling the listener that the speaker had knowledge that the representation was true while having no such knowledge; (c) reliance by the listener on the representation, coupled with deception by it; (d) the reasonableness of that reliance under the circumstances; and (e) damage to the listener proximately resulting from his or her reasonable reliance." *City of Prattville v, Post*, 831 So. 2d 622, 628 (Ala. Civ. App. 2002) (citing *Cato v. Lowder Realty Co.*, 630 So. 2d 378, 381-82 (Ala. 1993)).

Plaintiff fails to present any evidence to show that Parnell made a false representation in December of 2012 with respect to an existing material fact at the time he made his remarks.  Furthermore, as discussed above, the record is devoid of any evidence to suggest that:  (1) Parnell intended to deceive Plaintiff with his general reassurances; (2) Parnell concealed or failed to disclose any material information regarding Plaintiff's status with Alfa; or (3) Plaintiff reasonably relied on Parnell's assurances to believe that he would never face any potential changes regarding his position at Alfa.  Thus, when construing all the evidence in the light most favorable to Plaintiff, the court finds that Plaintiff's claim in Count V cannot survive summary judgment.

## V.  CONCLUSION

Based on the foregoing analysis, Alfa's motion for summary judgment (Doc. 66) was granted in part and denied in part (Doc. # 97).  The summary judgment motion was granted as to Plaintiff's state law claims in Counts II, III, IV, and V of the complaint.  The summary judgment motion was denied as to Plaintiff's Title VII claim of retaliation in Count I.

DONE this 6th day of April, 2016.

_____/s/ W. Keith Watkins_____
CHIEF  UNITED STATES DISTRICT JUDGE