IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT W. PACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:13-CV-697-WKW |
| ) | (WO) |
| ALFA MUTUAL INSURANCE ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion to clarify the court's summary judgment ruling and motion to amend the complaint filed by Plaintiff Robert W. Pace. (Doc. # 103.) Upon consideration of the motions and the parties' submissions, the court concludes that the motion to clarify is due to be granted, and the motion to amend is due to be denied.

**I.   DISCUSSION**

**A.   The complaint does not include a claim for actual or constructive discharge on the basis of Plaintiff's demotion.**

Plaintiff argues that, in his complaint, he pleaded a claim that the conditions imposed by his demotion[1] constituted a constructive discharge. The complaint does not contain a claim for constructive discharge on the basis of the demotion.[2]

---

[1] The facts of this case, including the circumstances of the demotion, are set out in the Memorandum Opinion and Order (Doc. # 98) entered on April 6, 2016.

In a short, uncited paragraph in his initial brief on the motion to clarify, Plaintiff suggests that he stated a claim for actual termination by alleging "termination from his position and offer of a demotion." (Doc. # 103 at 22.) Although Plaintiff did not offer any legal authority for his actual discharge theory, the court has considered it.

In *Thomas v. Dillard Department Stores, Inc.*, 116 F.3d 1432 (11th Cir. 1997), the Eleventh Circuit held that, while employees may not "merely assert[] that they were discharged where the evidence shows that they quit after a demotion," an offer of alternative employment does not necessarily foreclose "the fact-intensive inquiry of whether the plaintiff was actually terminated." 116 F.3d at 1434-35 & n.6. *Thomas* is applicable when the employer fully intends to actually terminate the employment relationship and does so, but, in terminating the employment relationship, the employer makes a reluctant, insincere, vague, noncommittal, or logistically unrealistic offer of demotion or reassignment, such as offering a position the employer has not verified is available.[3]  116 F. 3d at 1433-

---

[2] The complaint contains an allegation that Plaintiff was constructively discharged when he received a memorandum from his supervisor reprimanding him for failing to attend certain meetings after he was demoted. (Doc. # 1 at ¶¶ 47, 48, 65.) Defendants moved for and obtained summary judgment on that constructive discharge theory. (Doc. # 67 at 5-6; Doc. # 6 at 17 fn. 6.)

[3] *Thomas* indicates that a claim for actual termination also lies when the employer intends to terminate the employment relationship, but, after notifying the employee of the termination, the employer reassigns the employee at the employee's request. *Cf. Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1129, 1133 (10th Cir. 1983), cited in *Thomas*, 116 F.3d at 1435

34. In *Thomas*, consideration of the employer's sincerity in extending the offer of reassignment related to whether the offer was extended with a present, "*bona fide*" intention of reassigning the employee rather than with the intent to mask an actual termination. 116 F.3d at 1433 n.3 (explaining that an employer who intends to actually terminate an employee is not allowed to improve its legal position by offering a reassignment that it knows will not be accepted and then asserting that the employee simply quit).

Absent a convincing argument otherwise from Plaintiff, this case does not appear to fit *Thomas's* termination-plus-demotion theory. It is undisputed that Plaintiff's employer offered the demotion after deciding to eliminate Plaintiff's previous *position*. However, Plaintiff points to no evidence that the employer intended to and actually did terminate the *employment relationship*, but masked the termination with an insincere offer of a demotion without any reasonable expectation that Plaintiff would be reassigned to the position if he accepted it. Rather, the undisputed evidence shows that Plaintiff's employer actually intended to and did place Plaintiff in the demoted position. To the extent that the offer of demotion in this case was allegedly "insincere" because the employer harbored an unexpressed hope that the demotion would not be accepted or that the demotion would impose circumstances sufficiently adverse to prompt Plaintiff's resignation,

---

(holding that an employee was actually terminated, not merely demoted, when his employer informed him that he was being fired, but then reassigned him after he pleaded for another position).

3

the facts of this case lend themselves to a constructive discharge claim, not an actual discharge claim.

**B.    Absent a separate claim for constructive discharge, Plaintiff cannot recover front pay or back pay past the date of his resignation.**

In *Bourque v. Powell Electrical Manufacturing Co.*, 617 F. 2d 61 (5th Cir. 1980),[4] the Fifth Circuit held that, for policy reasons, in the absence of a constructive discharge, the plaintiff's damages were limited to back pay for the period during which she worked for the defendant under discriminatory conditions. *Bourque*, 617 F.2d at 65-66 & n.8; *see also Muller v. U.S. Steel Corp.*, 509 F.2d 923, 930 (10th Cir. 1975) (cited in *Bourque*, 617 F.2d at 66 n.8) ("Unless appellant was constructively discharged, he would not be entitled to damages in the form of back pay, interest and retirement from the date of leaving the [defendant's] employ."). The Fifth Circuit gave the following policy reason for its holding: that "society and the policies underlying Title VII will be best served if, where possible, unlawful discrimination is attacked within the context of existing employment relationships." 617 F.2d at 66 n.8.[5]

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[5] Plaintiff argues that, at least with respect to cases involving demotions, *Ford Motor Company v. E.E.O.C.,* 458 U.S. 219 (1982), reverses *Bourque's* policy requirement that a plaintiff who is subject to discrimination should remain in the discriminatory employment relationship to avoid cutting off the employer's liability for front and back pay. In *Ford*, the Supreme Court held that, "[a]lthough the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to

Plaintiff makes a number of arguments that the policy announced in *Bourque* is distinguishable here.  Among them are (1) that quitting after a demotion would not serve the purpose of the *Bourque* rule because the demotion had already forced Plaintiff out of his "existing employment relationship;" (2) that, unlike the plaintiff in *Bourque*, Plaintiff attempted to remain in Defendant's employ for an extended time until he determined that a resolution was not possible within the employment context; and (3) that the *Bourque* policy does not necessarily require assertion of a separate constructive discharge claim, but merely pertains to whether, in determining damages on a discrimination or retaliation claim, the employee's resignation cuts off the employer's liability for back pay, reinstatement, and front pay.

The court will not consider Plaintiff's arguments for distinguishing *Bourque* because, as Plaintiff concedes (Doc. # 112 at 18), the United States Supreme Court recently held that constructive discharge is always a separate claim and never an issue of whether damages on a simple discrimination claim are cut off by an employee's voluntary resignation.  *Green v. Brennan*, 136 S. Ct. 1769, 1778-80 (May 23, 2016).  The rationale of *Green* incorporated the assumption that back

---

backpay" if he fails to mitigate his damages by "refus[ing]" a job substantially equivalent to the one he was denied."  458 U.S. at 231-32.  *Ford* was a failure-to-hire case.  It did not concern whether Title VII's underlying policies required employees to continue in existing discriminatorily disadvantageous employment relationships until resolution of their claims.

pay, reinstatement, and front pay are available only for claims of unlawful actual or constructive discharge, and not for other types of claims. *Id*.

Although *Green* concerned a statute-of-limitations issue, Plaintiff has not convincingly demonstrated that the holding of *Green* is inapplicable here. Even if *Bourque* could be distinguished, *Green* would still require that, to be eligible for an award of front pay, reinstatement, or back pay beyond the date of his resignation, Plaintiff must assert a separate claim for constructive discharge.[6]

## C. **Plaintiff's EEOC charge did not administratively exhaust the constructive discharge claim**.

Before filing a judicial complaint for retaliation in violation of Title VII, a plaintiff must first exhaust administrative remedies by filing an administrative charge with the EEOC. *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892 (11th Cir. 2014). The exhaustion requirement "allow[s] the EEOC the first opportunity to investigate the alleged practices and to perform its role in

---

[6] Plaintiff cites *Clark v. Marsh*, 665 F.2d 1168 (D.C. Cir. 1981), for the proposition that he need not have included constructive discharge in his complaint to preserve it as an issue for trial. In *Clark*, a constructive discharge claim was not included in the complaint, but the evidence necessary to prove constructive discharge was presented at trial. On appeal, the constructive discharge claim was allowed on grounds that courts have the authority to award appropriate relief if dictated by the evidence, whether or not the relief was sought in the pleadings. *Clark*, 665 F.2d at 1172 n.4 (citing *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir. 1980), citing in turn Fed. R. Civ. P. 54(c)); *see also* Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."). In this case, the constructive discharge claim has not been tried by consent.

6

obtaining voluntary compliance and promoting conciliation efforts." *Id.* (citation and internal quotation marks omitted).

On June 24, 2013, prior to his resignation, Plaintiff filed an EEOC charge. (Doc. # 1-1.)  The EEOC charge did not include an express allegation of constructive discharge.  The EEOC issued a right-to-sue letter on July 3, 2013. (Doc. # 1-2.)  On July 22, 2013, Plaintiff sent his employer an email stating: "This is to inform you that I am resigning from my employment with Alfa effective immediately."  (Doc. # 103-3 at 22.)

Plaintiff argues that, despite the absence of an express constructive discharge allegation in the EEOC complaint, the same facts that supported his retaliation claim – the circumstances of the demotion –  also constituted conditions so severe that he was forced to resign.  Plaintiff further argues that he told the EEOC investigator who helped him file the charge that "he could not remain in the demoted position given [his supervisor's] retaliatory efforts."  (Doc. # 112 at 11.)[7] For these reasons, Plaintiff argues that he administratively exhausted the constructive discharge claim because the EEOC's investigation could reasonably have been expected to encompass a constructive discharge claim.  *See Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (holding that

---

[7] Plaintiff does not provide a record cite for this factual allegation.  Nevertheless, the court will consider it.

7

judicial claims are allowed if the EEOC investigation could reasonably have been expected to investigate the claims as an outgrowth of the EEOC charge).[8]

Viewing the facts in Plaintiff's favor, the EEOC may have been on notice that a reasonable person in plaintiff's position would have felt compelled to resign rather than accept the demotion. However, to establish a claim of retaliatory constructive discharge, not only must the retaliatory employment conditions be so severe as to reasonably compel resignation, but the employee must have "actually resigned" as a result of those conditions. *Green*, 136 S. Ct. at 1777.[9] Regardless

---

[8] In *Gregory*, the plaintiff alleged in her EEOC discrimination complaint that she had been terminated for no legitimate reason after complaining of discrimination. Noting that the plaintiff "filed an EEOC charge *after* she was terminated" and that "[t]he ultimate act that she complained about was that she was terminated," the court concluded an EEOC investigation could reasonably have been expected to uncover evidence of a retaliatory discharge and, therefore, the plaintiff had administratively exhausted the retaliatory discharge claim. *Gregory*, 355 F.3d at 1280 (emphasis in original). Here, however, the EEOC would not have had reason to investigate the circumstances that prompted Plaintiff's resignation because Plaintiff filed the EEOC complaint *before* he resigned, and he remained in the demoted position until after he received his right-to-sue letter.

[9] Plaintiff alleges that he should be allowed to amend his complaint because *Green* was a recent decision. However, to the extent *Green* holds that the employee's resignation is an element of a constructive discharge claim and that "an employee cannot bring a constructive-discharge claim until he is constructively discharged," *Green* does not contain a novel statement of the law. *See Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004) ("A constructive discharge involves both an employee's decision to leave and precipitating conduct."); *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (holding that constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that he is forced to quit his job). Allegations of retaliatory working conditions not resulting in discharge or involuntary resignation have historically been litigated as claims of retaliation or retaliatory hostile work environment. *See, e.g., Gowski v. Peake*, 682 F.3d 1299, 1311-12 (11th Cir. 2012) (recognizing a cause of action for retaliatory hostile work environment). A constructive discharge claim differs from a retaliation or hostile work environment claim not only because constructive discharge requires proof of an additional element of resignation, but also because the constructive discharge plaintiff must prove a heightened degree of severity or pervasiveness of hostile working conditions. *See Bryant*, 575 F.3d at 1298.

8

of the severity of the adverse employment conditions, until Plaintiff "actually resigned," Plaintiff was not constructively discharged, and the EEOC could not reasonably have been expected to launch a constructive discharge investigation.

As Plaintiff points out, in *Green*, the United States Supreme Court held that, for purposes of the statute of limitations, "a constructive-discharge claim accrues – and the limitations period begins to run – when the employee gives notice of his resignation, not on the effective date of that resignation." 136 S. Ct. at 1782. Plaintiff argues that he gave actual notice of his resignation prior to receiving the right-to-sue letter because he notified his employer that he would not remain in the demoted position and that he would resign if not reinstated to a comparable position in upper management. Plaintiff contends that he only remained employed during the pendency of the EEOC investigation "in an effort to work out the difference between himself and his employer." (Doc. # 112 at 7.)

*Green* does not hold that a constructive discharge claim accrues when the demoted employee gives contingent notice that he intends to resign at some unspecified date in the future if attempts to work out a satisfactory alternative are unsuccessful. Rather, under *Green*, "the employee resigns when he gives his employer *definite* notice of his intent to resign." 136 S. Ct. at 1782 (emphasis added). Plaintiff provides no evidence of a "definite" notice of resignation prior to the date of the right-to-sue letter. After Plaintiff told his employer he would not accept the demotion and that he would resign unless he was reinstated or provided

9

another acceptable position, he continued to work while attempting to reach an acceptable agreement for his continued employment. (Doc. # 103 at 7-8; Doc. # 112 at 7 & n.3.) After the employer foreclosed the possibility of a satisfactory reassignment by offering a nonnegotiable choice between demotion and a severance package, Plaintiff did not immediately resign, but continued working in the demoted position while the employer allowed him time "to think about it and make a decision." (Doc. # 68-1 at 51.)[10] Viewing the evidence in the light most favorable to Plaintiff, the July 22, 2013 email was Plaintiff's earliest "definite" notice of resignation. (Doc. # 103-3 at 22.)

### D. Plaintiff failed to administratively exhaust his constructive discharge claim by failing to file a new EEOC charge after receiving the right-to-sue-letter.

The EEOC dismissed Plaintiff's complaint prior to his July 22, 2013 resignation. Plaintiff has shown no reason why he could not have filed a new EEOC constructive discharge complaint before filing this action on September 26, 2013, thus "allow[ing] the EEOC the first opportunity to investigate" the claim. *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892 (11th Cir. 2014). Because Plaintiff did not first present the constructive discharge claim to

---

[10] Plaintiff did not cite his deposition testimony that he remained in the demoted position while he thought about whether to accept the severance package. That portion of the deposition testimony immediately follows testimony cited by Plaintiff. The court has considered it because it adds relevant context to the cited testimony and to Plaintiff's argument that "[Plaintiff] spent several weeks attempting to resolve the demotion issue with [the employer,] and it was only after [the employer] responded with the severance package that [Plaintiff] was forced to resign." (Doc. # 68-1 at 50-51; Doc. # 112 at 8; Doc. # 112-1.)

10

the EEOC before filing suit, he failed to exhaust his administrative remedies with respect to the constructive discharge claim.  *Cf. Duble*, 572 F. App'x at 893 ("[Plaintiff]'s EEOC claim was still pending[] when he was terminated[,] . . . and he had the opportunity to amend his EEOC charge or file a new charge relating to his termination. [Plaintiff], however, chose not to amend or file a new charge. Therefore, [Plaintiff] failed to exhaust his administrative remedies regarding his termination claims.").

### E.     Plaintiff's motion to amend is due to be denied as futile.

Plaintiff seeks leave to amend his complaint to assert a constructive discharge claim.  Where, as here, a motion to amend is filed after the deadline set by the scheduling order, the moving party must first show "good cause" for the untimeliness of the motion before the court can consider whether the amendment should be allowed under Rule 15(a) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 16(b)(3)-(4) (providing that a scheduling order "must limit the time to . . . amend the pleadings," and that a scheduling order "may be modified only for good cause and with the judge's consent"); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."). Because of the recency of *Green* and the facts and procedural history of this particular case, the court finds good cause to consider Plaintiff's motion to amend.

However, for the reasons stated in Section I.C.-D., Plaintiff's constructive discharge claim is subject to dismissal on grounds that Plaintiff failed to exhaust his administrative remedies. Therefore, under Rule 15(a), Plaintiff's motion to amend the complaint to add the constructive discharge claim is due to be denied as futile. *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1250 (11th Cir. 2015) (holding that, although leave to amend shall be freely given under Rule 15(a) when justice so requires, a motion to amend may be denied if the amendment would be futile); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.").

## II. CONCLUSION

Accordingly, it is ORDERED that

1. Plaintiff's motion to clarify the court's summary judgment ruling (Doc. # 103) is GRANTED with the following clarification: Plaintiff cannot obtain front pay, back pay, or reinstatement because the complaint does not include a separate claim for constructive discharge; and

2. Plaintiff's motion to amend (Doc. # 103) is DENIED.

DONE this 17th day of August, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE